FILED
RECEIVED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**FILED IN CAMERA UNDER SEAL**

THE UNITED STATES OF AMERICA ex rel.
KARYN L. DENK,

    Plaintiff,

v.                                        Case No.: 3:02-cv-443-J-21TJC

LEESBURG FAMILY MEDICINE, P.A, a Florida
Professional Association,

    Defendant.
_____/

## COMPLAINT

The UNITED STATES OF AMERICA ex rel. KARYN L. DENK ("RELATOR"), by and through their undersigned attorney, A. Brian Phillips, P.A., with offices at 111 North Orange Avenue, Suite1030, Orlando, Florida, as and for its Complaint against the Defendant, alleges that:

### JURISDICTION

1. This action arises under the laws of the United States, specifically, the federal False Claims Act, 31 U.S.C. § 3729, *et seq.*

2. This Court has subject matter jurisdiction over the claims set forth herein under 28 U.S.C. § 1345 and 31 U.S.C. § 3730.

3. This is a claim for civil penalties and for recovery of damages inflicted upon the United States of America which arose as a result of Defendant's false or fraudulent Medicare billing practices, and Defendant's knowingly making, using, or causing to be made or used, false or fraudulent records or statements in order to conceal their false and fraudulent Medicare billing practices.

### VENUE

4. Venue lies within the Middle District of Florida because the Defendant, Leesburg Family

Medicine, P.A., a Florida Professional Association, conducted business and/or resided in Lake County, Florida during all times material hereto and the acts and omissions giving rise to the instant action occurred within the Middle District of Florida.

## PARTIES

5.   Defendant, Lake Family Medicine, P.A. (LFM), is a Florida professional association, organized and operating under the laws of the State of Florida and with principal place of business in Leesburg, Florida, and also doing business in Lady Lake, Florida.

6.   KARYN L. DENK, (the "RELATOR") is a citizen of the State of Florida.

## FACTUAL ALLEGATIONS

7.   RELATOR was employed by Leesburg Family Medicine, P.A. ("LFM") from February 1997 to May of 1999 as a nurse practitioner. During that time, LFM operated a family medical practice in Leesburg and Lady Lake, Florida, with five medical doctors and the RELATOR, along with other staff as well as the party(ies) responsible for billing Medicare, which billing the RELATOR believes was done internally. Approximately 85-95% of LFM's patients used Medicare as their primary health care insurer. For the first three months of RELATOR's employment by LFM, she worked closely with the medical doctors. RELATOR presented every patient's care plan to a physician at the inception of her service, on an individual basis, and RELATOR would receive feedback from the LFM medical doctors, regarding each patient. Initially, the RELATOR was on premises and working from 8:00 a.m. to 5:00 p.m., Monday to Friday. At first, there was always a physician on site during the RELATOR's work time.

8.   The first three months of RELATOR's employment at LFM were considered her "probation" period. Thereafter, she was given more independence in her treatment of patients. Instead of presenting every patient, RELATOR only reported the more serious, complicated cases to LFM medical doctors. RELATOR's work schedule also changed. RELATOR began to work one evening

during the week (5:00 p.m. to 8:00 p.m. or later, depending on the patient load), during which RELATOR would see between 15 and 20 patients. RELATOR also began to work one Saturday each month, from 8:00 a.m. to approximately 5:00 p.m. (depending on patient load), on which she would see an average of twenty patients. RELATOR eventually became what LFM personnel, the doctors or other staff termed the "walk-in provider," which meant that RELATOR treated many first-time LFM patients. Established LFM patients were treated by RELATOR for previously diagnosed medical conditions, and newly diagnosed conditions, without having to present each patient's case individually.

9. To the best of her knowledge, all of RELATOR's services provided to patients at LFM clinics were billed as "incident to" the care of the physician who was at varying times in the clinic on the day RELATOR provided the care, or who was on call that particular day, but often absent. The LFM administrative and business staff were responsible for billing patients' insurance providers. RELATOR was told by Gail Mayer, LFM's office administrator, that RELATOR's services to Medicare patients could properly be billed as "incident to" as long as a physician was available to discuss a case in person or by telephone. RELATOR had no knowledge at that time that the methodology employed by LFM for the billing of the services provided by RELATOR or any other LFM employee was improper.

10. RELATOR recalls discussing the "incident to" billing issue with Gail Mayer sometime soon after RELATOR began her employment with LFM and in Gail Mayer's main office in Leesburg. The conversation took place after RELATOR read an article in her nursing journal known as "Nurse Practitioner Journal" from early 1999 that addressed the "incident to" billing practice. RELATOR told Gail Mayer that the information in the article indicated that if a physician is not present in the office, then billing should have been done under RELATOR's own Medicare provider number, and that this same principle should be applied to other LFM nurse practitioners. Gail Mayer responded to RELATOR by telling her that LFM never billed in the manner suggested by RELATOR, and that

LFM's mid-level health care providers did not need to have their own Medicare provider numbers, and that if LFM billed in that fashion it could not afford to employ RELATOR. To the best of RELATOR's knowledge and belief, LFM's Medicare billing practices did not change subsequent to RELATOR's conversation with Gail Mayer.

11. The fraud herein reported by RELATOR is that the 'incident to' provisions require caution and an accurate detailing of these provision of services rendered by a Medicare provider in light of the fact that the Medicare Program looks to that particular provider to assure the government that indeed the medical services specified within the claim for reimbursement have been rendered under the supervision the provider to whom a provider number has been awarded. In this instance for example both diagnostic and therapeutic services were provided to patients of LFM and claims were submitted asserting that such services were provided under in the presence of or under the supervision of such providers when in fact no physicians were present in the office of the physicians or under the care and supervision of physician providers. To the knowledge of the RELATOR, LFM billed under the individual physician provider numbers and the RELATOR was told each day by one of the other nursing staff which doctor she would be billing under for entry of that data on the super bill.

12. On numerous occasions, medical care and treatment, i.e. medical services, were provided to patients of LFM and requests for reimbursement were submitted incident thereto. The requests for reimbursement were false. Specifically, in many instances requests for reimbursement detailed specific medical services rendered by a specific medial provider when, in fact, that medical provider never provided those services or the services were not done incident to the provision of medical services. At best, the requests for reimbursement were submitted by one or more physician who perchance happened to be present within the office at the time when the request for reimbursement was submitted; but in many cases requests for reimbursement were submitted by physicians who, in fact had

no personal involvement in the rendition of the medical services in the request for reimbursement.

13. As RELATOR indicated above, at least as early as soon after her hire, RELATOR put LFM office administrator Gail Mayer on specific notice of the noncompliance with Medicare requirements. In effect, RELATOR told Gail Mayer that LFM and its employees were falsifying requests for reimbursement. RELATOR is not aware of what action, if any, LFM has taken to correct these fraudulent practices. Thus, it is RELATOR's intention to bring this to the attention of the United States government at this time. RELATOR would have brought to the attention of the United States government earlier, but for her newly acquired knowledge of Medicare billing practices and procedures.

## CLAIM FOR RELIEF

### COUNT ONE - SUBSTANTIVE VIOLATIONS OF THE FALSE CLAIMS ACT

14. RELATOR realleges and incorporates by reference the allegations made in paragraphs 1 through 16 of this Complaint.

15. This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §§ 3729-32, as amended.

16. Through the acts described above, Defendant and its agents and employees knowingly presented and caused to be presented to the United States Government false and fraudulent claims, records, and statements in order to obtain reimbursement for health care services provided under Medicare.

17. Through the acts described above and otherwise, Defendant and its agents and employees knowingly made, used and/or caused to be made or used false records and statements in order to get such false and fraudulent claims paid and approved by the United States Government.

18. The United States and its fiscal intermediaries, unaware of the falsity of the records, statements, and claims made or submitted by Defendant and its agents and employees paid and continue

to pay Defendant's for claims that would not be paid if the truth were known.

19. Plaintiff United States and its fiscal intermediaries, unaware of the falsity of the records, statements, and claims made or submitted by Defendant — or of its failure to disclose material facts which would have reduced government obligations — have not recovered Medicare funds that would have been recovered otherwise.

20. By reason of the Defendant's false records, statements, claims, and omissions, the United States has been damaged.

WHEREFORE, Plaintiff/RELATOR, KARYN L. DENK, prays for judgment against Defendant as follows:

a. That Defendant cease and desist from violating 31 U.S.C. § 3729 et seq.;

b. That the Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained as a result of Defendants' actions, as well as a civil penalty against Defendant of $10,000.00 for each violation of 31 U.S.C. § 3729;

c. That Plaintiff/RELATOR be awarded the maximum amount allowed pursuant to § 3730(d) of the Federal Civil False Claims Act;

d. That Plaintiff/RELATOR be awarded all costs and expenses of this action, including attorneys' fees; and

e. That the United States and Plaintiff/RELATOR receive all such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38, Fed.R.Civ.P., Plaintiff/RELATOR hereby demands a trial by jury of all issues so triable.

DATED this 29th day of April 2002.

Respectfully Submitted,

_____
A. BRIAN PHILLIPS
Florida Bar No. 0067113
Phillips & Miller, P.A.
111 N. Orange Avenue
Suite 1030
Orlando, Florida 32801
Telephone:   (407) 872-0777
Facsimile:     (407) 872-0704
Attorney for Plaintiff/RELATOR