UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA
*ex. rel.*, KARYN L. WALKER,

        Plaintiff,

v.                                              Case No. 5:02-cv-131-Oc-10GRJ

R & F PROPERTIES OF LAKE COUNTY,
INC.,

        Defendant.
_____

## **ORDER**

Pending before the Court is Plaintiff's Motion To Amend Plaintiff's Complaint To Add Parties (Doc. 182) to which Defendant filed a response in opposition. (Doc. 195.) Plaintiff filed supplemental authority in support of her motion. (Doc. 189.) For the reasons discussed below, Plaintiff's Motion To Amend Plaintiff's Complaint To Add Parties (Doc. 188) is due to be **DENIED**.

### A.    BACKGROUND

On May 6, 2002, Plaintiff filed this *qui tam* action pursuant to the False Claims Act, 31 U.S.C. § 3729 et seq. claiming that the Defendant R&F Properties of Lake County, Inc., formerly known as Leesburg Family Medicine, P.A., (hereinafter "LFM") presented false claims to Medicare for reimbursement. Plaintiff, who worked as a nurse practitioner at LFM from February 1997 to May 1999, alleges that LFM filed false claims for Medicare reimbursement by billing Medicare for services rendered by

nurse practitioners and physician assistants as if those services were rendered "incident to the service of a physician."

The Court previously granted Summary Judgment in favor of Defendant. (Doc. 100.) In an opinion dated December 30, 2005, the Eleventh Circuit reversed the Court's Order granting summary judgment and remanded the action to this Court for further proceedings.(Doc. 126.) Defendant subsequently filed a Petition for Writ of Certiorari with the United States Supreme Court, which was denied on November 6, 2006.

Pursuant to the original Case Management and Scheduling Order dated September 11, 2003, the deadline for joining parties was December 1, 2003 and the parties were advised that "[m]otions to amend any pleading . . . filed after issuance of this Case Management and Scheduling Order are disfavored." (Doc. 33.) While the deadlines for joining parties and amending the pleadings have never been extended, the Court has moved other case management deadlines on six different occasions.[1] After numerous extensions, the discovery deadline finally was set for December 31, 2007.[2] Additionally, updated expert reports were due by March 21, 2008, rebuttal expert reports were due by April 4, 2008 and all expert depositions were to be completed by April 30, 2008.[3] The dispositive motion deadline was set for May 16,

---

[1] See Doc. 70 (Order granting unopposed motion to extend discovery deadlines filed by Plaintiff); Doc. 133 (Order granting Plaintiff's motion to continue trial date); Doc. 137 (Order granting parties' joint motion to continue trial date); Doc. 140 (Order granting Plaintiff's unopposed motion to continue trial date); Doc. 156 (Order granting Plaintiff's motion to modify the trial schedule); Doc. 179 (Order granting *ore tenus* motion to extend existing case management deadlines.)

[2] See Doc. 156. The Court subsequently authorized a number of depositions to take place during January and February of 2008. See Doc. 179.

[3] See Id.

2008, the final pretrial conference was set for July 23, 2008 and trial was scheduled for the weeks of August 4, 2008, August 11, 2008 and August 18, 2008.[4]

On February 13, 2008, almost six years after the initial lawsuit was filed and only months before the August trial date, Plaintiff filed the instant Motion To Amend Plaintiff's Complaint To Add Parties (Doc. 182) seeking leave to add as defendants the principals of LFM – i.e., Jeffery Robinson, M.D. and Larry Foster, M.D.  Specifically, Plaintiff seeks leave to add the following allegations:

> 19.   Defendants Drs. Robinson and Foster allowed LFM to use their respective Unique Physician Identification Numbers ("UPIN") when submitting claims for services performed by Mid-Level providers in violation of Medicare "incident to" guidelines and procedures.  Once these false claims for reimbursement were submitted to the United States, Medicare actually reimbursed Drs. Robinson and Foster for the services performed.  Drs. Robinson and Foster then assigned these reimbursements to LFM in exchange for their salaries and other consideration.
>
> 20.   Therefore, Drs. Robinson and Foster knowingly made or caused to be made or used, false or fraudulent records or statements to the United States in order to conceal their own, and LFM's, false and fraudulent Medicare billing practices.

Doc. 182, Exhibit B.

## B.   DISCUSSION

Where, as here, the requested amendment occurs after the deadline has expired in the Court's Case Management and Scheduling Order, the party requesting the amendment must first make a showing of good cause pursuant to Fed. R. Civ. P. 16(b).[5] This good cause standard precludes modification unless the schedule cannot "be met

---

[4] See id.

[5] Sosa v. Airprint Sys., Inc.   133 F.3d 1417, 1418 (11th Cir. 1998).

despite the diligence of the party seeking the extension."[6]   If the court finds that the party lacked due diligence, then the inquiry into good cause is ended.[7]

Plaintiff argues that there is good cause to allow the amendment based upon the recently produced discovery that purportedly illustrates Dr. Robinson's and Dr. Foster's culpability -- i.e., posting journals received from Defendant in July 2007, supplemental interrogatory responses provided by Defendant on January 25, 2008 and documents produced by third-party First Coast Service Options, Inc. on October 27, 2007.[8] According to Plaintiff, the discovery shows that:

> Drs. Robinson's and Foster's provider numbers were utilized by the Defendant when it submitted claims for reimbursement for services performed by its non-physician providers as if those services were performed "incident to" those of Drs. Robinson and/or Foster when, in reality, those patients were new LFM patients never before seen by any physician provider employed by Defendant or, alternatively, no physician was physically present in Defendant's office suite when the mid-level provider treated the Medicare patient.

(Doc. , page 9.)

While this recent discovery may further support Plaintiff's allegations, there has never been any dispute that LFM billed non-physician services under the provider numbers of the physicians. From the beginning of this litigation, Plaintiff has alleged that

---

[6] See id. (quoting Fed.R.Civ.P. 16, advisory committee's note).

[7] See Pioneer Intern. (USA), Inc. v. Reid, 2007 WL 4365637, *2 (M.D. Fla. 2007.)

[8] Plaintiff also contends in passing that discovery has revealed that "the money paid by Medicare as reimbursement is actually paid directly to the physician whose [provider number] was utilized. See Doc. 182, page 10.  Plaintiff has not identified any source for this information. However, it appears to be public information regarding the general Medicare reimbursement process.  Assuming it is public information, Plaintiff likely could have obtained it from other sources, including her own expert or the Centers for Medicare & Medicaid Services.

"LFM billed under the individual physician provider numbers"[9] and Defendant has admitted in its answers to the various complaints that LFM "billed the Plaintiff's services to Medicare under the name of an LFM physician."[10]  Additionally, Plaintiff testified during her October 30, 2003 deposition that she did not have a Medicare provider number and that all claims were being billed under the physicians' provider numbers.[11] Accordingly, the involvement of these individual physicians and their provider numbers has been known since the beginning of this lawsuit – and thus well before the December 1, 2003 deadline to join parties.

Moreover, Plaintiff has consistently taken the position that the individual physicians would be subject to personal liability for the allegedly fraudulent claims.  On September 1, 2004, Plaintiff filed an affidavit of her own expert – Christina Melnykovych, RHIA -- in which Ms. Melnykovych opined that "physicians whose UPIN numbers are appended to claims for purposes of recouping Medicare payments are ultimately responsible for the accuracy and completeness of the information contained therein."[12] Moreover, in a letter dated January 24, 2006,  Plaintiff's counsel advised defense counsel that "we believe that your clients face enormous personal exposure because they were the decision makers when it came to specifying the type of reimbursement sought from the Federal Government."[13]  On April 14, 2006 Plaintiff's counsel advised

---

[9] See Complaint (Doc. 1, ¶11); Amended Complaint (Doc. 52, ¶15.)

[10] Doc. 42, ¶9; Doc. 66, ¶10

[11] See Doc. 81, page 168.

[12] Doc. 90, Exhibit ¶33.

[13] Doc. 195, Exhibit C.

defense counsel that Plaintiff intended "to now move to amend the Complaint again so as to name the individual physicians involved and we intend to amend the complaint to add a count to pierce the corporate veil."[14]  Then, on July 25, 2007, after deposing Dr. Robinson and Dr. Foster, Plaintiff's counsel wrote to defense counsel that, "[w]e think it is clear from the testimony of the two doctors that they acted, at a very minimum, in reckless disregard with respect to the proper billing services of mid-level care providers incident to the services of the Doctors."[15]

Nevertheless, Plaintiff argues that she did not obtain the necessary evidence to support a claim against Dr. Robinson and Dr. Foster until she received the recently produced discovery. Plaintiff contends that she was "unable to confirm the extent of Drs. Robinson's and Foster's involvement in the fraudulent claims submitted to Medicare for reimbursement until after she received all of the posting journals from the Defendant and compared those documents with information produced by First Coast."[16]  This argument is unconvincing for several reasons.  As discussed above, Defendant has admitted throughout this litigation that LFM billed Medicare for the services of non-physicians using physicians' provider numbers.   Moreover, while Plaintiff did not receive copies of posting journals from June 1999 through April 2002 until recently, it is undisputed that on December 12, 2003, Defendant produced posting journals from

---

[14] Doc. 195, Exhibit D.

[15] Doc. 195, Exhibit G.

[16] Doc. 182, page 12.

February 1997 through May 1999.[17] Lastly, Plaintiff apparently did not even attempt to obtain discovery from First Coast Service Options, Inc. until August 20, 2007 – more than five years after this litigation began.

Plaintiff also argues that the appellate history of the case supports a finding of good cause. While the appeal to the Eleventh Circuit and the Petition for Writ of Certiorari with the United States Supreme Court inevitably caused some delays in this case, those delays do not justify an amendment to the pleadings at this late stage.

Finally, although Plaintiff has requested several continuances of case management deadlines, she has never once mentioned the need to add parties nor has she sought an extension of the deadlines to do so. Indeed, at the Court's most recent hearing on January 4, 2008 – one month before Plaintiff filed the instant motion, and after she had received most of the discovery – Plaintiff did not mention the possibility of amending her complaint to join Dr. Robinson and Dr. Foster as defendants.

Accordingly, the Court concludes that Plaintiff has not acted with the required due diligence in preserving her rights. In light of Plaintiff's lack of diligence, Plaintiff's eleventh hour attempt to add defendants more than four years after the deadline prescribed by the Court's Scheduling Order is not supported by good cause.

However, even assuming good cause had been established under Rule 16, Plaintiff's motion also is due to be denied because an amendment would not be appropriate under Fed. R. Civ. P., 15(a). This rule provides in relevant part that "leave to amend shall be freely given when justice so requires." "Although 'leave to amend shall

---

[17] See Doc. 195, Exhibit A.

be freely given when justice so requires,' a motion to amend may be denied on 'numerous grounds' such as 'undue delay, undue prejudice to the defendants, and futility of the amendment.'"[18]

Here, despite Plaintiff's argument to the contrary, allowing an amendment of the Complaint after the close of the discovery period and only months before the trial would result in the need to completely re-open discovery and inevitably would result in a further delay of the disposition of a case that has been pending for six years. Notably, if the Court was to permit the Plaintiff to join Dr. Robinson and Dr. Foster as defendants, the case would have to be continued and Dr. Robinson and Dr. Foster would be entitled to challenge the sufficiency of the complaint against them, and through independent legal counsel, engage in discovery to represent their personal interests. There is little question that they would be severely prejudiced if they were forced to defend this six-year old case in a matter of months without being given the opportunity to engage in meaningful discovery of their own. Thus, as discussed above, the undue delay by Plaintiff in bringing this motion would prejudice the ability of Dr. Robinson and Dr. Foster to adequately defend these charges six years after the suit was filed, after extensive discovery has been conducted and on the eve of trial. As the oft quoted expression goes "All good things must come to an end" - and this case is one of them.

Accordingly, for these reasons, even if the Plaintiff could show good cause under Rule 16 for amending the scheduling order, Plaintiff's Motion To Amend Plaintiff's

---

[18] Maynard v. Board of Regents of Div. Of Univ. Of Fla. Dept of Educ., 342 F.3d 1281, 1287 (11th Cir. 2003)(quoting Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1284 (11th Cir. 2000.)

Complaint To Add Parties (Doc. 188) would, nonetheless, fail and would be denied under Rule 15(a). [19]

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on April 9, 2008.

Copies to:
All Counsel

GARY R. JONES
United States Magistrate Judge

---

[19] Although the Court need not address the issue of futility - and to be sure futility is not a basis for the Court's denial of Plaintiff's motion - there, nonetheless, appears to be a serious statute of limitations problem with Plaintiff's claims against Doctor Foster and Doctor Robinson, at least as to Medicare claims submitted before February 13, 2002.